(May 5, 1924.)

## ROY S. HART and LACY LUTON HART, Respondents, v. E. L. TURNER, H. J. WEAVER and W. F. Mc-FARLAND, Appellants.

[226 Pac. 282.]

VENDORS—COMMUNITY PROPERTY—HUSBAND AND WIFE—SIGNATURE BY—ACKNOWLEDGMENT BY—TIME OF ESSENCE—EXTENSION AGREEMENT—STIPULATION OF FACTS—EVIDENCE INCONSISTENT WITH STIPULATION—CONCLUSIONS OF LAW IN STIPULATION—SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY—CONSENT OF THIRD PARTY.

1. A contract for the sale of community property, not signed and acknowledged by both husband and wife, is invalid.

2. Where a contract for the sale of land does not make time of the essence, but the parties to the contract agree that performance shall be made within a specified time, the agreement extending the time of performance has the effect of making time of the essence.

3. A stipulation of facts does not necessarily bind the parties as to conclusions of law embraced therein; nor as to the facts when the party relying thereon introduces evidence inconsistent with the stipulation.

4. Where from the inception of the contract, to and including the time of the trial, the vendor in a contract for the sale of land is unable to perform the contract according to its terms, specific performance will not be decreed against the vendee.

5. A contract depending for its performance upon the consent of a third party not a party thereto cannot be specifically enforced, since the court cannot enforce its decree.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. T. Bailey Lee, Judge.

Action for specific performance of contract for the sale of land. Judgment for plaintiff. *Reversed.*

Publisher's Note.

2. Time as essence of contract between vendor and purchaser, see note in 104 **Am. St.** 266

E. A. Walters and R. P. Parry, for Appellants.

Since the land in question was the separate property of respondent Mrs. Hart it is necessary that any valid agreement pertaining thereto be executed by her. (*Chaney v. Gauld Co.*, 28 Ida. 76, 152 Pac. 468; *Knudsen v. Lythman*, 33 Ida. 794, 200 Pac. 130.)

The agreement signed by respondent Mrs. Hart was lacking in all of the essential elements of a contract capable of being specifically enforced. (4 Pomeroy's Eq. Jur., 3d ed., sec. 1405; 25 R. C. L. 218, 219; 36 Cyc. 589, 890; *Armstrong v. Henderson*, 16 Ida. 566, 102 Pac. 361; *Reynolds v. Wetzler*, 254 Ill. 607, 98 N. E. 993; *Allen v. Ludington State Bank*, 169 Mich. 139, 135 N. W. 454; *Roberts v. Cox*, 91 Neb. 553, 136 N. W. 831; *Thompson v. Burns*, 15 Ida. 572, 99 Pac. 111; *Forister v. Sullivan*, 231 Mo. 345, 132 S. W. 722; *Racich Asbestos Mfg. Co. v. Brooks*, 141 App. Div. 14, 130 N. Y. Supp. 382; *Warwick v. Warwick*, 60 Wash. 467, 111 Pac. 568; *Bauman v. Kiesian*, 164 Cal. 582, 129 Pac. 968; *Castevens v. Castevens*, 227 Ill. 547, 118 Am. St. 291, 81 N. E. 709; *Carlson v. O'Connor*, 79 Or. 333, 154 Pac. 755; *Colonna Dry Dock Co. v. Colonna*, 108 Va. 230, 61 S. E. 770; *Deeds v. Stephens*, 10 Ida. 332, 79 Pac. 77.)

The agreement, if any, covering the lands affected by this suit was totally lacking from its inception in mutuality of both obligation and remedy. (*Childs v. Reed*, 34 Ida. 450, 202 Pac. 685; *Moody v. Crane*, 34 Ida. 103, 199 Pac. 652, 6 L. R. A., N. S., 391, note; *Wit-Keets-Poo v. Rowton*, 26 Ida. 193, 152 Pac. 1064; 25 R. C. L., sec. 33; *Norris v. Fox*, 45 Fed. 406; Paige on Contracts, secs. 3308, 3318; *Lunt v. Lorschiered*, 285 Ill. 589, 121 N. E. 237; *Banbury v. Arnold*, 91 Cal. 606, 27 Pac. 935; C. S., sec. 4666; *Fargo v. Bennett*, 35 Ida. 359, 206 Pac. 692; *McKinney v. Merritt*, 35 Ida. 600, 208 Pac. 244.)

Specific performance cannot be required of defendant Weaver for the reason that he never signed the agreement, if any. (25 R. C. L. 206; *Lee v. Dodge*, 5 Wall. (U. S.)

808, 18 L. ed. 472; *Sawyer v. Brosart,* 67 Iowa, 678, 56 Am. Rep. 371, 25 N. W. 876.)

Respondents sought to have trial court erect and enforce an agreement different from that entered into by the parties and are therefore entitled to no relief. (*Smith v. Krall,* 9 Ida. 535, 75 Pac. 263; *Machold v. Farnan,* 14 Ida. 258, 94 Pac. 170.)

Because of the character of the agreement and of the specific provisions thereof, it was incumbent upon the respondents to perform within a reasonable time, which they did not do. (Elliott on Contracts, sec. 1555; *Marshall v. Gilster,* 34 Ida. 420, 201 Pac. 711; *Durant v. Comegys,* 3 Ida. 204, 28 Pac. 425; *Machold v. Farnan, supra.*)

Sweeley & Sweeley, for Respondents.

As the land of the wife was not separately bargained for but was included with the community property in a single deal which has been partially executed by both parties, the contract is enforceable. (C. S., sec. 7975; *Francis v. Green,* 7 Ida. 68, 65 Pac. 362; *Barton v. Dunlap,* 8 Ida. 668, 66 Pac. 832; *Deeds v. Stephens,* 8 Ida. 514, 69 Pac. 534; *Fleming v. Baker,* 12 Ida. 346, 85 Pac. 1092; *Havlick v. Davidson,* 15 Ida. 787, 100 Pac. 91; *King v. Seebeck,* 20 Ida. 223, 118 Pac. 292; *Houser v. Hobart,* 22 Ida. 735, 127 Pac. 997, 43 L. R. A., N. S., 310; *Wolf v. Eagleson,* 29 Ida. 177, 157 Pac. 1122.)

The appellants did not at any time make demand for a deed or tender performance of the balance of their contract. They could not rescind without such tender and demand. (37 R. C. L., p. 652, sec. 413; *Machold v. Farnan,* 14 Ida. 258, 94 Pac. 170.)

The trial court had the right to enter a conditional decree. "A conditional decree may provide that on the payment or tender to him of a designated sum the defendant shall execute a deed of conveyance of the property in controversy." (25 R. C. L. 344, sec. 170, and cases cited; *LeVine v. Whitehouse,* 37 Utah, 260, Ann. Cas. 1912C, 407, 109 Pac. 2;

*Bateman v. Hopkins,* 157 N. C. 470, Ann. Cas. 1913C, 642, 73 S. E. 133.)

"Under the provisions of C. S., sec. 6687, no particular form of complaint is required, but a statement of the facts constituting the cause of action in ordinary and concise language is sufficient, and the plaintiff can be sent out of court only when, upon the facts pleaded, he is entitled to no relief either at law or in equity." (*Poncia v. Eagle,* 28 Ida. 60, 152 Pac. 208; *Carroll v. Hartford Fire Ins. Co.,* 28 Ida. 466, 154 Pac. 983; *Bates v. Capital State Bank,* 21 Ida. 141, 121 Pac. 561; *Rauh v. Oliver,* 10 Ida. 3, 77 Pac. 20; *Anderson v. War Eagle, etc.,* 8 Ida. 789, 72 Pac. 671.)

BRINCK, District Judge.—This is an action for specific performance of a contract for the purchase of land. From a judgment and decree for plaintiffs, the defendants, vendees, appeal.

The respondents, Mr. and Mrs. Hart, plaintiffs in the court below, are husband and wife. On November 19, 1919, appellants, having been negotiating for the purchase of 120 acres of land belonging, as hereinafter stated, to the respondents, submitted to respondents a written memorandum of a contract for the sale thereof by respondents to appellants. The writing later was lost and its contents were proved at the trial by oral testimony. The trial court found that the contract showed the names of the parties, the description of the property, the purchase price, an acknowledgment of the payment of $500 that day made thereon, and the statement that the remainder was to be paid when the abstract of title was furnished, and the deeds ready for delivery. The purchase price was $150 an acre or an aggregate of $18,000. Appellants and Mr. Hart signed the memorandum, and the court found, on conflicting testimony, that Mrs. Hart either signed it or ratified it in a way that made it binding upon her. It is not claimed, nor does it appear in the evidence, that the contract was acknowledged by any of the parties.

Upon receipt of the abstract, it was discovered by the appellants that 70 acres of the land stood of record in the

name of Mr. Hart, which the court found to be community property, and that the other 50 acres stood of record in the name of Mrs. Hart, and that she was an American Indian, and could not dispose of the 50 acres without the approval of the government. The precise nature of the restriction on her alienation of the land is not shown in the record, but the pleadings admit, and the court found, that she could dispose of the land only with the approval of the government of the United States. The court further found that this 50 acres had been bought with her money.

After making this discovery, the appellants and Mr. Hart, on December 4, 1919, agreed that appellants should pay to him at that time a further sum of $10,000 and receive the deed of respondents to the 70 acres, which was done; and at that time Mr. Hart stated to appellants that the deed to the remaining 50 acres could be had in 10 or 12 days and the appellants replied that they would give respondents 30 days in which to deliver it. Mrs. Hart was not present on December 4th, but had executed and acknowledged the deed on December 3d and testified that she understood the transactions of December 4th and that Mr. Hart acted for her there.

The respondents immediately took up with the government the matter of approving the sale, without result so far as the record discloses, until the receipt by Mrs. Hart of a letter of date May 21, 1920, from the chief clerk of the Office of Indian Affairs in the Department of the Interior at Washington, stating:

"The office will take favorable action on the sale of your land at Twin Falls, whenever the consideration is deposited with the Superintendent of the Umatilla School. When the approved deed is sent to the Superintendent, instructions will be given as to the disposition of the proceeds of the sale."

Respondents thereupon notified appellants of the receipt of this letter. Appellants then told them that they would not accept the deed or make payment for the land and respondents brought this action for specific performance.

The court decreed specific performance, ordering that respondents deposit with the clerk their deed to the 50 acres, showing approval thereof by the Secretary of the Interior, or the Commissioner of Indian Affairs of the United States, and that within fifteen days thereafter the appellants complete their contract with the respondents by paying to the clerk the sum of $7,500, with interest from May 26, 1920, and costs of suit; and that if appellants do not make such payment, the 50 acres be sold and the proceeds thereof be applied so far as necessary, to the satisfaction of the amount due respondents, and if the proceeds are not sufficient to pay the same, that a deficiency judgment be entered against the appellants, and that execution issue thereon. No time is designated within which the respondents shall deposit their deed.

Various errors are assigned. Included among them is the court's finding that the defendants contracted to purchase the 120 acres of land in question, and the conclusion of law "that after the defendants had partially performed their contract by making payment of a large part of the purchase price of the property, and taking a deed for the most valuable portion of the land, and as they had not restored or offered to restore to plaintiffs the property deeded to them, the defendants cannot rescind or repudiate any portion of their contract."

These assignments of error go to the question of whether the contract of November 19, 1919, was a valid contract. A serious question is raised by the evidence and the assignments of error as to whether Mrs. Hart signed the contract. The evidence on this point is conflicting and the finding is that she either signed it or ratified it in such a way as to make it binding upon her. The latter portion of this finding is a conclusion of law, rather than a finding of fact. It cannot be determined what were the facts upon which the court based this conclusion; but notwithstanding this question, it is clear that the original written contract, in so far as it related to the 70 acres of community property, was invalid. Even if it were signed by Mrs. Hart, it is not

claimed that the contract was acknowledged either by her or by Mr. Hart, and there is no evidence to that effect; and without acknowledgment by both of them, the contract was to that extent invalid, under the provisions of C. S., sec. 4666. (*McKinney v. Merritt*, 35 Ida. 600, 208 Pac. 244; *Fargo v. Bennett*, 35 Ida. 359, 206 Pac. 692.)

The portion of the contract as to the community property was, however, performed, when on December 4, 1919, the respondents conveyed to appellants the 70 acres, and appellants paid them the balance of the purchase price therefor at the rate named in the original contract; and by agreeing at the same time for an extension of time within which to perform as to Mrs. Hart's land, the parties left that portion of the contract in effect as an executory contract. It would seem, however, that this transaction constituted a severance of the original contract by the act of the parties, inasmuch as there was now left unpaid merely the purchase price for the 50 acres figured at $150 per acre, and in view of Mr. Hart's statement that as to the remaining 50 acres, he would take a chance on getting a deed, and if he did not get it, he would take the loss himself. Therefore this suit as it seems to us, is to be viewed, not as an action for specific performance of a contract to convey 120 acres, which has been partially performed, but as an action for the specific performance of a contract for 50 acres at $150 an acre, which is wholly executory.

Appellants contend that specific performance cannot be decreed because respondents were not able to perform within the time specified in their extension agreement, and assign as error the finding of fact that in none of the agreements relating to the delivery of the deed time was made of the essence. The evidence is to the effect that the original contract was to be performed in ten days from its date; the court made no finding on this point, but did find on conflicting evidence that when the deed to the community property was delivered, the appellants consented to give the respondents 30 days in which to deliver the deed to the remaining 50 acres. Where a contract for the sale of land

does not make time of the essence, but the parties thereafter agree that performance shall be made within a specified time, it is held that the agreement extending the time of performance has the effect of making time of the essence. (*Marshall v. Gilster*, 34 Ida. 420, 201 Pac. 711.)

Whether the facts of this case bring it within the rule just stated, it is not necessary to determine, in view of the conclusion hereinafter reached.

Appellants also assign as error the finding of fact that the plaintiffs were able, ready and willing to carry out their contract by delivering to the defendants the deed for the 50 acres belonging to Mrs. Hart, with the approval of the proper department of the United States government, and contend that the judgment is contrary to the evidence, in that the respondents never were able to perform their part of the contract.

It is clear that at the inception of the contract Mrs. Hart could not have performed the same. It is conceded that before she could convey the land she must have the approval of the United States government, which was not a party to the contract.

Because of this lack of mutuality of remedy at the inception of the contract, appellants contend that specific performance should not be decreed, even though in the meantime respondents had become able to perform. We do not deem it necessary to determine whether this case is within an exception to the rule that mutuality of remedy must exist at the inception of the contract, for the reason that in this case mutuality of remedy was not shown to exist at the time the suit was started or even at the time of the trial.

A stipulation was made before the trial as to certain facts, one paragraph reciting that the matter of procuring the approval of the government "received consideration by the acting chief clerk in the Office of Indian Affairs in the Department of the Interior of the United States, who was the officer whose duty it was to pass upon the same, with the result that the said proposed sale was by him approved, and

such approval was by him in the month of May, 1920, reported to said plaintiff.'' Respondents introduced this stipulation in evidence, but did not choose to rest thereon upon this point of the case, inasmuch as they also introduced the letter itself from the chief clerk of the Office of Indian Affairs, which was addressed to Mrs. Hart, and is quoted hereinabove. From the accompanying testimony, it appears that this letter is the approval referred to in the stipulation above mentioned. The statements that said chief clerk was the officer whose duty it was to pass upon the same, and that said proposed sale was by him approved, are no doubt in the nature of conclusions of law rather than the statement of facts, and the stipulation should be considered in connection with the evidence introduced by the respondents inconsistent therewith. A stipulation of facts is not necessarily binding upon the parties as to conclusions of law embraced therein, nor when the party relying thereon introduces evidence inconsistent with the stipulation. (*Hunt v. Van Burg*, 75 Neb. 304, 106 N. W. 329; *Lyon v. Lumber Co.*, 77 Kan. 823, 92 Pac. 589.) The letter did not constitute an approval of respondents' conveyance. It was only an indication by the clerk in the Office of Indian Affairs that upon the performance of a condition not contemplated by the contract, viz., the payment of the purchase money prior to the delivery of the deed, rather than concurrent therewith, that office would take favorable action. Under the contract the appellants were not compelled to accept a deed which would not convey to them an unencumbered and marketable title, and were not compelled to accept a deed not approved by the United States government, and they were entitled to receive such a deed concurrently with the payment of the purchase money. The contract as found by the court expressly provided that the deeds were to be delivered when the money was paid; and aside from this testimony, in the absence of evidence to the contrary, it would be assumed that the performance was to be concurrent. (2 Williston on Contracts, sec. 835; *Marshall v. Gilster, supra.*)

No evidence was introduced showing that the government later modified its requirement that the money be deposited in Umatilla, Oregon, as condition precedent to their approval of the sale; so that at the time of the trial it appears that the approval of the government could only have been had upon the purchase price being sent to the Umatilla school in Oregon, and then the government, if it carried out the intention expressed in the letter of the acting chief clerk, could have approved the deed, and it could have been delivered to appellants.

There was no mutuality of remedy, because plaintiffs were not in a position to perform their part of the agreement, and under these circumstances, specific performance could not be decreed. (4 Pomeroy, Equity Juris., 4th ed., sec. 1405, p. 3331; *Childs v. Reed,* 34 Ida. 450, 202 Pac. 685; *Zaring v. Lavatta,* 36 Ida. 459, 211 Pac. 557.)

There is nothing in the record to show that the court could enforce, as to respondents, the decree that was entered. The government had not signified that it would approve the deed unless the purchase money were first sent to the Umatilla school, and there is no way in which the court could compel respondents to deposit their deed bearing the approval of the Secretary of the Interior or the Commissioner of Indian Affairs with the clerk of the court. A contract depending for its performance upon the consent of a third party, not a party thereto, cannot be enforced in equity, because a court could not enforce its decree by compelling the consent of the third party. (*Ellis v. Treat,* 236 Fed. 120, 149 C. C. A. 330; *Farson v. Fogg,* 205 Ill. 326, 68 N. E. 756; *Seller v. Greer,* 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589; Pomeroy, Specific Performance, sec. 295; 4 Pomeroy, Equity Juris., 4th ed., p. 3336.)

For the foregoing reasons the judgment of the trial court is reversed, with the direction to dismiss the complaint. Costs will be awarded to appellants.

McCarthy, C. J., and Budge and Wm. E. Lee, JJ., concur.